(Slip Opinion)          OCTOBER TERM, 2015          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MOLINA-MARTINEZ *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 14–8913.   Argued January 12, 2016—Decided April 20, 2016

The Federal Sentencing Guidelines first enter the sentencing process
when the United States Probation Office prepares a presentence re-
port containing, as relevant here, an advisory Guidelines range based
on the seriousness of a defendant's offense and the extent of his crim-
inal history.  A district court may depart from the Guidelines, but it
"must consult [them] and take them into account when sentencing."
*United States* v. *Booker*, 543 U. S. 220, 264.  Given the Guidelines'
complexity, a District Court's use of an incorrect Guidelines range
may go unnoticed.  That error can be remedied on appeal pursuant to
Federal Rule of Criminal Procedure 52(b), provided that (1) there is
an error that was not intentionally relinquished or abandoned, *Unit-
ed States* v. *Olano*, 507 U. S. 725, 732–733; (2) the error is plain, *i.e.,*
clear or obvious, *id.,* at 734; and (3) the error affected the defendant's
substantial rights, *ibid.*, which in the ordinary case means he or she
must "show a reasonable probability that, but for the error," the out-
come of the proceeding would have been different, *United States* v.
*Dominguez Benitez*, 542 U. S. 74, 82.  Once these three conditions
have been met, the court of appeals should exercise its discretion to
correct the forfeited error if the error "'seriously affects the fairness,
integrity or public reputation of judicial proceedings.'"  *Olano*, 507
U. S., at 736 (brackets omitted).

   Petitioner Molina-Martinez pleaded guilty to being unlawfully pre-
sent in the United States after having been deported following an ag-
gravated felony conviction.  The Guidelines range in his presentence
report was 77 to 96 months.  He requested, and the Probation Office
recommended, a 77-month sentence, while the Government requested
96 months.  The District Court, with little explanation, sentenced
him to the lowest end of what it believed to be the applicable Guide-

lines range—77 months. On appeal, Molina-Martinez argued for the first time that the Probation Office and the District Court miscalculated his Guidelines range, which should have been 70 to 87 months, and noted that his 77-month sentence would have been in the middle of the correct range, not at the bottom. The Fifth Circuit agreed that the District Court used an incorrect Guidelines range but found that Molina-Martinez could not satisfy Rule 52(b)'s requirement that the error affect his substantial rights. It reasoned that a defendant whose sentence falls within what would have been the correct Guidelines range must, on appeal, identify "additional evidence" showing that use of the incorrect Guidelines range in fact affected his sentence.

*Held*: Courts reviewing Guidelines errors cannot apply a categorical "additional evidence" rule in cases, like this one, where a district court applies an incorrect range but sentences the defendant within the correct range. Pp. 8–16.

(a) The Guidelines establish the essential framework for sentencing proceedings. Sentencing courts " '*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.' " *Peugh* v. *United States*, 569 U. S. ___, ___. Sentencing Commission statistics confirm that the Guidelines inform and instruct the district court's determination of an appropriate sentence. In the usual case, the systemic function of the selected Guidelines range will affect a defendant's sentence. As a result, a defendant who shows that the district court mistakenly deemed applicable an incorrect, higher range will, in the ordinary case, have demonstrated a reasonable probability of a different outcome. That showing will suffice for relief if Rule 52(b)'s other requirements are met. Pp. 9–12.

(b) The unworkable nature of the Fifth Circuit's "additional evidence" rule is evident here, where the record shows that the District Court gave little explanation for the sentence it selected, rejected the Government's request for a sentence at the top of the erroneous Guidelines range, and chose the sentence requested by the defendant and recommended by the Probation Office—a sentence at the bottom of the erroneous Guidelines range. This demonstrates that the Guidelines served as the starting point for the sentencing and were the focal point for the proceedings that followed. Given the sentence the District Court chose, and because the court said nothing to suggest that it would have imposed the same sentence regardless of the Guidelines range, there is at least a reasonable probability that the court would have imposed a different sentence had it known that 70 months was the lowest sentence the Commission deemed appropriate. Pp. 12–13.

(c) Rejection of the Fifth Circuit's rule means only that a defendant

Syllabus

can rely on the application of an incorrect Guidelines range to show an effect on his substantial rights, not that the Government will have to prove that every Guidelines error was harmless. And the Government's concern over the judicial resources needed for the resentencing proceedings that might result from today's holding is unfounded because the holding is consistent with the approach taken by most Courts of Appeals and because remanding for resentencing is less costly than remanding for retrial. Pp. 13–15.

588 Fed. Appx. 333, reversed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., filed an opinion concurring in part and concurring in the judgment, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–8913

_____

## SAUL MOLINA-MARTINEZ, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[April 20, 2016]

JUSTICE KENNEDY delivered the opinion of the Court.

This case involves the Federal Sentencing Guidelines. In sentencing petitioner, the District Court applied a Guidelines range higher than the applicable one. The error went unnoticed by the court and the parties, so no timely objection was entered. The error was first noted when, during briefing to the Court of Appeals for the Fifth Circuit, petitioner himself raised the mistake. The Court of Appeals refused to correct the error because, in its view, petitioner could not establish a reasonable probability that but for the error he would have received a different sentence. Under that court's decisions, if a defendant's ultimate sentence falls within what would have been the correct Guidelines range, the defendant, on appeal, must identify "additional evidence" to show that use of the incorrect Guidelines range did in fact affect his sentence. Absent that evidence, in the Court of Appeals' view, a defendant who is sentenced under an incorrect range but whose sentence is also within what would have been the correct range cannot demonstrate he has been prejudiced by the error.

Most Courts of Appeals have not adopted so rigid a standard. Instead, in recognition of the Guidelines' central role in sentencing, other Courts of Appeals have concluded that a district court's application of an incorrect Guidelines range can itself serve as evidence of an effect on substantial rights. See, *e.g., United States* v. *Sabillon-Umana*, 772 F. 3d 1328, 1333 (CA10 2014) (application of an erroneous Guidelines range "'runs the risk of affecting the ultimate sentence *regardless of* whether the court ultimately imposes a sentence within or outside'" that range); *United States* v. *Vargem*, 747 F. 3d 724, 728–729 (CA9 2014); *United States* v. *Story*, 503 F. 3d 436, 440 (CA6 2007). These courts recognize that, in most cases, when a district court adopts an incorrect Guidelines range, there is a reasonable probability that the defendant's sentence would be different absent the error. This Court granted certiorari to reconcile the difference in approaches.

I

A

The Sentencing Guidelines provide the framework for the tens of thousands of federal sentencing proceedings that occur each year. Congress directed the United States Sentencing Commission (USSC or Commission) to establish the Guidelines. 28 U. S. C. §994(a)(1). The goal was to achieve "'*uniformity* in sentencing . . . imposed by different federal courts for similar criminal conduct,' as well as '*proportionality* in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity.'" *Rita* v. *United States*, 551 U. S. 338, 349 (2007). To those ends, the Commission engaged in "a deliberative and dynamic process" to create Guidelines that account for a variety of offenses and circumstances. USSC, Guidelines Manual §2, ch. 1, pt. A, intro. comment., p. 14 (Nov. 2015) (USSG). As part of that

process, the Commission considered the objectives of federal sentencing identified in the Sentencing Reform Act of 1984—the same objectives that federal judges must consider when sentencing defendants. Compare 28 U. S. C. §991(b) with 18 U. S. C. §3553(a). The result is a set of elaborate, detailed Guidelines that aim to embody federal sentencing objectives "both in principle and in practice." *Rita, supra,* at 350.

Uniformity and proportionality in sentencing are achieved, in part, by the Guidelines' significant role in sentencing. See *Peugh* v. *United States*, 569 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 10). The Guidelines enter the sentencing process long before the district court imposes the sentence. The United States Probation Office first prepares a presentence report which includes a calculation of the advisory Guidelines range it considers to be applicable. Fed. Rules Crim. Proc. 32(d)(1)(A)–(C); see generally 18 U. S. C. §3552(a). The applicable Guidelines range is based on the seriousness of a defendant's offense (indicated by his "offense level") and his criminal history (indicated by his "criminal history category"). Rules 32(d)(1)(B)–(C). The presentence report explains the basis for the Probation Office's calculations and sets out the sentencing options under the applicable statutes and Guidelines. Rule 32(d)(1). It also contains detailed information about the defendant's criminal history and personal characteristics, such as education and employment history. Rule 32(d)(2).

At the outset of the sentencing proceedings, the district court must determine the applicable Guidelines range. *Peugh, supra,* at \_\_\_ (slip op., at 10). To do so, the court considers the presentence report as well as any objections the parties might have. The court then entertains the parties' arguments regarding an appropriate sentence, including whether the sentence should be within the Guidelines range or not. Although the district court has

discretion to depart from the Guidelines, the court "must consult those Guidelines and take them into account when sentencing." *United States* v. *Booker*, 543 U. S. 220, 264 (2005).

B

The Guidelines are complex, and so there will be instances when a district court's sentencing of a defendant within the framework of an incorrect Guidelines range goes unnoticed. In that circumstance, because the defendant failed to object to the miscalculation, appellate review of the error is governed by Federal Rule of Criminal Procedure 52(b).

Rule 52, in both its parts, is brief. It states:

"(a) HARMLESS ERROR. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

"(b) PLAIN ERROR. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

The starting point for interpreting and applying paragraph (b) of the Rule, upon which this case turns, is the Court's decision in *United States* v. *Olano*, 507 U. S. 725 (1993). *Olano* instructs that a court of appeals has discretion to remedy a forfeited error provided certain conditions are met. First, there must be an error that has not been intentionally relinquished or abandoned. *Id.*, at 732–733. Second, the error must be plain—that is to say, clear or obvious. *Id.,* at 734. Third, the error must have affected the defendant's substantial rights, *ibid.*, which in the ordinary case means he or she must "show a reasonable probability that, but for the error," the outcome of the proceeding would have been different, *United States* v. *Dominguez Benitez*, 542 U. S. 74, 76, 82 (2004). Once these three conditions have been met, the court of appeals

should exercise its discretion to correct the forfeited error if the error "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Olano, supra,* at 736 (brackets omitted).

## II

The petitioner here, Saul Molina-Martinez, pleaded guilty to being unlawfully present in the United States after having been deported following an aggravated felony conviction, in violation of 8 U. S. C. §§1326(a) and (b). As required, the Probation Office prepared a presentence report that related Molina-Martinez's offense of conviction, his criminal history, his personal characteristics, and the available sentencing options. The report also included the Probation Office's calculation of what it believed to be Molina-Martinez's Guidelines range. The Probation Office calculated Molina-Martinez's total offense level as 21. It concluded that Molina-Martinez's criminal history warranted 18 points, which included 11 points for five aggravated burglary convictions from 2011. Those 18 criminal history points resulted in a criminal history category of VI. That category, combined with an offense level of 21, resulted in a Guidelines range of 77 to 96 months.

At the sentencing hearing Molina-Martinez's counsel and the Government addressed the court. The Government acknowledged that the Probation Office had "recommended the low end on this case, 77 months." App. 30. But, the prosecution told the court, it "disagree[d] with that recommendation," and was "asking for a high end sentence of 96 months"—the top of the Guidelines range. *Ibid.* Like the Probation Office, counsel for Molina-Martinez urged the court to enter a sentence at the bottom of the Guidelines range. Counsel asserted that "77 months is a severe sentence" and that "after the 77 months, he'll be deported with probably a special release term." *Id.,* at 32. A sentence of 77 months, counsel con-

tinued, "is more than adequate to ensure he doesn't come back again." *Ibid.*

After hearing from the parties, the court stated it was adopting the presentence report's factual findings and Guidelines calculations. It then ordered Molina-Martinez's sentence:

> "It's the judgment of the Court that the defendant, Saul Molina-Martinez, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 77 months. Upon release from imprisonment, Defendant shall be placed on supervised release for a term of three years without supervision." *Id.*, at 33.

The court provided no further explanation for the sentence.

On appeal, Molina-Martinez's attorney submitted a brief pursuant to *Anders* v. *California*, 386 U. S. 738 (1967). The attorney explained that, in his opinion, there were no nonfrivolous grounds for appeal. Molina-Martinez, however, submitted a *pro se* response to his attorney's *Anders* brief. In it he identified for the first time what he believed to be an error in the calculation of his criminal history points under the Guidelines. The Court of Appeals concluded that Molina-Martinez's argument did not appear frivolous. It directed his lawyer to file either a supplemental *Anders* brief or a brief on the merits of the Guidelines issue.

Molina-Martinez, through his attorney, filed a merits brief arguing that the Probation Office and the District Court erred in calculating his criminal history points, resulting in the application of a higher Guidelines range. The error, Molina-Martinez explained, occurred because the Probation Office failed to apply §4A1.2(a)(2) of the Guidelines. See USSG §4A1.2(a)(2) (Nov. 2012). That provision addresses how multiple sentences imposed on

the same day are to be counted for purposes of determining a defendant's criminal history. It instructs that, when prior sentences were imposed on the same day, they should be counted as a single sentence unless the offenses "were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense)." *Ibid.*

Molina-Martinez's presentence report included five aggravated burglary convictions for which he had been sentenced on the same day. The Probation Office counted each sentence separately, which resulted in the imposition of 11 criminal history points. Molina-Martinez contended this was error because none of the offenses were separated by an intervening arrest and because he had been sentenced for all five burglaries on the same day. Under a correct calculation, in his view, the burglaries should have resulted in 5 criminal history points instead of 11. That would have lowered his criminal history category from VI to V. The correct criminal history category, in turn, would have resulted in a Guidelines range of 70 to 87 months rather than 77 to 96 months. Had the correct range been used, Molina-Martinez's 77-month sentence would have been in the middle of the range, not at the bottom.

Molina-Martinez acknowledged that, because he did not object in the District Court, he was entitled to relief only if he could satisfy Rule 52(b)'s requirements. He nevertheless maintained relief was warranted because the error was plain, affected his substantial rights, and impugned the fairness, integrity, and public reputation of judicial proceedings.

The Court of Appeals disagreed. It held that Molina-Martinez had not established that the District Court's application of an incorrect Guidelines range affected his substantial rights. It reasoned that, when a correct sentencing range overlaps with an incorrect range, the reviewing court "'do[es] not assume, in the absence of addi-

tional evidence, that the sentence [imposed] affects a defendant's substantial rights.'" 588 Fed. Appx. 333, 335 (CA5 2014) (*per curiam*); see also *United States* v. *Blocker*, 612 F. 3d 413, 416 (CA5 2010). Molina-Martinez, the court ruled, had not put forth the additional evidence necessary to show that the error affected his substantial rights. "The mere fact that the court sentenced Molina-Martinez to a low-end sentence," the Court of Appeals reasoned, "is insufficient on its own to show that Molina-Martinez would have received a similar low-end sentence had the district court used the correct Guidelines range." 588 Fed. Appx., at 335. Instead, Molina-Martinez needed to identify "'additional evidence'" in the record showing that the Guidelines had an effect on the District Court's selection of his sentence. *Ibid.* The court noted that "the district court made no explicit statement suggesting that the Guidelines range was a primary factor in sentencing." *Ibid.* And the court did not view as probative "the parties' anchoring of their sentencing arguments in the Guidelines" or "the district court's refusal to grant the government's request for a high-end sentence of 96 months." *Ibid.*

This Court granted certiorari to resolve the disagreement among Courts of Appeals over how to determine whether the application of an incorrect Guidelines range at sentencing affected the defendant's substantial rights. See 576 U. S. ___ (2015).

## III

The Court of Appeals for the Fifth Circuit stands generally apart from other Courts of Appeals with respect to its consideration of unpreserved Guidelines errors. This Court now holds that its approach is incorrect.

Nothing in the text of Rule 52(b), its rationale, or the Court's precedents supports a requirement that a defendant seeking appellate review of an unpreserved Guidelines

error make some further showing of prejudice beyond the fact that the erroneous, and higher, Guidelines range set the wrong framework for the sentencing proceedings. This is so even if the ultimate sentence falls within both the correct and incorrect range. When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error.

## A

Today's holding follows from the essential framework the Guidelines establish for sentencing proceedings. The Court has made clear that the Guidelines are to be the sentencing court's "starting point and . . . initial benchmark." *Gall* v. *United States*, 552 U. S. 38, 49 (2007). Federal courts understand that they "'*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" *Peugh*, 569 U. S., at \_\_\_ (slip op., at 10). The Guidelines are "the framework for sentencing" and "anchor . . . the district court's discretion." *Id.,* at \_\_\_, \_\_\_ (slip op., at 11, 18) "Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence.*'" *Id.*, at \_\_\_ (slip op., at 11).

The Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious. A district court that "improperly calculat[es]" a defendant's Guidelines range, for example, has committed a "significant procedural error." *Gall*, *supra*, at 51. That same principle explains the Court's ruling that a "retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to

constitute an *ex post facto* violation." *Peugh*, 569 U. S., at
___ (slip op., at 13).

The Commission's statistics demonstrate the real and
pervasive effect the Guidelines have on sentencing.
In most cases district courts continue to impose "either
within-Guidelines sentences or sentences that depart
downward from the Guidelines on the Government's
motion." *Id.,* at ___ (slip op., at 12); see USSC, 2014
Annual Report and 2014 Sourcebook of Federal Sen-
tencing Statistics S–50 (19th ed.) (Table N) (2014 Source-
book). In less than 20% of cases since 2007 have district
courts "imposed above- or below-Guidelines sentences
absent a Government motion." *Peugh*, *supra,* at ___–___
(slip op., at 12–13); see also 2011 Annual Report and 2011
Sourcebook of Federal Sentencing Statistics 63 (16th ed.)
(Figure G); 2015 Annual Report and 2015 Sourcebook of
Federal Sentencing Statistics (20th ed.) (Figure G), on-
line at http://www.ussc.gov/sites/default/files/pdf/research-
and-publications/annual-reports-and-sourcebooks/2015/
FigureG.pdf (as last visited Apr. 15, 2016). As the Court
has recognized, "when a Guidelines range moves up or
down, offenders' sentences [tend to] move with it." *Peugh*,
*supra*, at ___ (slip op., at 13); USSC, Final Quarterly Data
Report, FY 2014, pp. 32–37 (Figures C to H). These reali-
ties have led the Court to observe that there is "consider-
able empirical evidence indicating that the Sentencing
Guidelines have the intended effect of influencing the
sentences imposed by judges." *Peugh*, *supra*, at ___ (slip
op., at 12).

These sources confirm that the Guidelines are not only
the starting point for most federal sentencing proceedings
but also the lodestar. The Guidelines inform and instruct
the district court's determination of an appropriate sen-
tence. In the usual case, then, the systemic function of the
selected Guidelines range will affect the sentence. This
fact is essential to the application of Rule 52(b) to a Guide-

lines error. From the centrality of the Guidelines in the sentencing process it must follow that, when a defendant shows that the district court used an incorrect range, he should not be barred from relief on appeal simply because there is no other evidence that the sentencing outcome would have been different had the correct range been used.

In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome. And, again in most cases, that will suffice for relief if the other requirements of Rule 52(b) are met. There may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. The sentencing process is particular to each defendant, of course, and a reviewing court must consider the facts and circumstances of the case before it. See *United States* v. *Davila*, 569 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 13) ("Our essential point is that particular facts and circumstances matter"). The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate. And that explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines. The Government remains free to "poin[t] to parts of the record"—including relevant statements by the judge—"to counter any ostensible showing of prejudice the defendant may make." *United States* v. *Vonn*, 535 U. S. 55, 68 (2002). Where, however, the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights. Indeed, in the

ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder. Absent unusual circumstances, he will not be required to show more.

The Court of Appeals' rule to the contrary fails to take account of the dynamics of federal sentencing. In a significant number of cases the sentenced defendant will lack the additional evidence the Court of Appeals' rule would require, for sentencing judges often say little about the degree to which the Guidelines influenced their determination. District courts, as a matter of course, use the Guidelines range to instruct them regarding the appropriate balance of the relevant federal sentencing factors. This Court has told judges that they need not provide extensive explanations for within-Guidelines sentences because "[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning." *Rita*, 551 U. S., at 356–357. In these situations, reviewing courts may presume that a sentence imposed within a properly calculated Guidelines range is reasonable. *Id.,* at 341. As a result, the cases where the Guidelines are most likely to have influenced the district court's sentencing decision—those where the court chose a sentence within what it believed to be the applicable Guidelines range—are also the cases least likely to provide the defendant with evidence of the Guidelines' influence beyond the sentence itself. The defendants in these cases should not be prevented by a categorical rule from establishing on appeal that there is a reasonable probability the Guidelines range applied by the sentencing court had an effect on their within-Guidelines sentence.

B

This case illustrates the unworkable nature of the Court of Appeals' additional evidence rule. Here the court held

that Molina-Martinez could not establish an effect on his substantial rights. Yet the record points to a different conclusion. The District Court said nothing specific about why it chose the sentence it imposed. It merely "adopt[ed] the . . . guideline applications in the presentence investigation report," App. 33, which set the range at 77 to 96 months; rejected the Government's argument for a sentence at the top of the Guidelines range; and agreed with the defendant's request for, and the Probation Office's recommendation of, a sentence at the bottom of the range. As intended, the Guidelines served as the starting point for the sentencing and were the focal point for the proceedings that followed.

The 77-month sentence the District Court selected is conspicuous for its position as the lowest sentence within what the District Court believed to be the applicable range. As Molina-Martinez explained to the Court of Appeals, the District Court's selection of a sentence at the bottom of the range, despite the Government's request for the maximum Guidelines sentence, "evinced an intention . . . to give the minimum recommended by the Guidelines." Brief for Appellant in No. 13–40324 (CA5), p. 18. The District Court said nothing to suggest that it would have imposed a 77-month sentence regardless of the Guidelines range. Given these circumstances, there is at least a reasonable probability that the District Court would have imposed a different sentence had it known that 70 months was in fact the lowest sentence the Commission deemed appropriate.

IV

The Government contends that permitting a defendant to establish prejudice through the fact of a Guidelines error alone eliminates the main difference between Rules 52(a) and 52(b)—which party must prove whether the complained-of error had an effect. Brief for United States

21.  As noted, Rule 52(a) states: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  When a defendant makes a timely objection, the Government can rely on Rule 52(a) to argue that the error does not warrant correction because it was harmless.  Although Rules 52(a) and (b) both require an inquiry into whether the complained-of error was prejudicial, there is "'one important difference'" between the subparts—under (b), but not (a), "'[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.'"  Brief for United States 18 (quoting *Olano*, 507 U. S., at 734).  In the Government's view, ruling for Molina-Martinez will require the Government to prove the harmlessness of every Guidelines error raised on appeal regardless of whether it was preserved.  Brief for United States 27–28.

The holding here does not lead to that result.  The decision today simply states that courts reviewing sentencing errors cannot apply a categorical rule requiring additional evidence in cases, like this one, where the district court applied an incorrect range but nevertheless sentenced the defendant within the correct range.  Rejection of that rule means only that a defendant can rely on the application of an incorrect Guidelines range to show an effect on his substantial rights.

The Government expresses concern over the judicial resources needed for the resentencing proceedings that might result from the Court's holding.  It is doubtful today's holding will result in much of an increased burden.  As already noted, today's holding is consistent with the approach taken by most Courts of Appeals.  See, *e.g., Sabillon-Umana*, 772 F. 3d, at 1333 (collecting cases).  Yet only a small fraction of cases are remanded for resentencing because of Guidelines related errors.  See 2014 Sourcebook S–6, S–153 (Tables 2 and 62) (of the roughly 75,000 cases sentenced in 2014, only 620 resulted in a

remand for resentencing because of a statutory or Guide-lines related error).  Under the *Olano* framework, appel-late courts retain broad discretion in determining whether a remand for resentencing is necessary.  Courts have, for example, developed mechanisms short of a full remand to determine whether a district court in fact would have imposed a different sentence absent the error.  See, *e.g., United States* v. *Currie*, 739 F. 3d 960, 967 (CA7 2014) (ordering "limited remand so that the district judge [could] consider, and state on the record, whether she would have imposed the same sentence . . . knowing that [the defend-ant] was subject to a five-year rather than a ten-year statutory minimum term of imprisonment").  And even when a Court of Appeals does decide that resentencing is appropriate, "a remand for resentencing, while not cost-less, does not invoke the same difficulties as a remand for retrial does."  *United States* v. *Wernick*, 691 F. 3d 108, 117–118 (CA2 2012); see also *Sabillon-Umana*, *supra*, at 1334 (noting that the "cost of correction is . . . small" be-cause "[a] remand for sentencing . . . doesn't require that a defendant be released or retried").  The Government's concern about additional, burdensome procedures appears unfounded, and, in any event, does not warrant reading into Rule 52(b) a requirement that does not exist.

\*  \*  \*

In the ordinary case the Guidelines accomplish their purpose.  They serve as the starting point for the district court's decision and anchor the court's discretion in select-ing an appropriate sentence.  It follows, then, that in most cases the Guidelines range will affect the sentence.  When that is so, a defendant sentenced under an incorrect Guidelines range should be able to rely on that fact to show a reasonable probability that the district court would have imposed a different sentence under the correct range.  That probability is all that is needed to establish an effect on substantial rights for purposes of obtaining relief under

Rule 52(b).

The contrary judgment of the Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–8913

_____

## SAUL MOLINA-MARTINEZ, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[April 20, 2016]

JUSTICE ALITO, with whom JUSTICE THOMAS joins,
concurring in part and concurring in the judgment.

I agree with the Court that the Fifth Circuit's rigid
approach to unpreserved Guidelines errors is incorrect.
And I agree that petitioner has shown a reasonable proba-
bility that the District Court would have imposed a differ-
ent sentence in his case if his recommended Guidelines
sentence had been accurately calculated. Unlike the
Court, however, I would not speculate about how often the
reasonable probability test will be satisfied in future cases.
The Court's predictions in dicta about how plain-error
review will play out are predicated on the view that sen-
tencing judges will continue to rely very heavily on the
Guidelines in the future, but that prediction may not turn
out to be accurate. We should not make predictions about
the future effects of Guidelines errors, particularly since
some may misunderstand those predictions as veiled
directives.

I

"'No procedural principle is more familiar to this Court
than that a constitutional right,' or a right of any other
sort, 'may be forfeited in criminal as well as civil cases by
the failure to make timely assertion of the right before the
tribunal having jurisdiction to determine it.'" *United*

*States* v. *Olano*, 507 U. S. 725, 731 (1993) (quoting *Yakus* v. *United States*, 321 U. S. 414, 444 (1944)). Consistent with this principle, Rule 52 of the Federal Rules of Criminal Procedure treats defendants who preserve their claims much more favorably than those who fail to register a timely objection. When the defendant has made a timely objection to an error, the Government generally bears the burden of showing that the error was harmless. *Olano*, 507 U. S., at 734. By contrast, when a defendant has failed to make a timely objection, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Ibid.*; see also *id.*, at 741–742 (KENNEDY, J., concurring).

This framework applies to errors in the calculation of an advisory Guidelines sentence. If the defendant does not call the error to the attention of the sentencing judge, the defendant may obtain relief on appeal only if he or she proves that the error was prejudicial—specifically, that there is a "reasonable probability" that, but for the error, the sentence would have been different. *United States* v. *Dominguez Benitez*, 542 U. S. 74, 81–83 (2004). Meeting this burden "should not be too easy for defendants." *Id.*, at 82. Instead, the standard should be robust enough to "enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error." *Ibid.* By placing this burden on the defendant, Rule 52(b) compels defense counsel to devote careful attention to the potential complexities of the Guidelines *at sentencing*, thus providing the district court—which "is ordinarily in the best position to determine the relevant facts and adjudicate the dispute"—with "the opportunity to consider and resolve" any objections. *Puckett* v. *United States*, 556 U. S. 129, 134 (2009); see also *ibid.* ("[A]ppellate-court authority to remedy" unpreserved errors "is strictly circumscribed" in order to "induce the

timely raising of claims and objections"); *United States* v. *Vonn*, 535 U. S. 55, 73 (2002) ("[T]he value of finality requires defense counsel to be on his toes, not just the judge, and the defendant who just sits there when a mistake can be fixed cannot just sit there when he speaks up later on"); *Olano*, *supra*, at 742–743 (KENNEDY, J., concurring) ("[T]he operation of Rule 52(b) does not permit a party to withhold an objection . . . and then to demand automatic reversal").

Whether a defendant can show a "reasonable probability" of a different sentence depends on the "particular facts and circumstances" of each case. *United States* v. *Davila*, 569 U. S. \_\_\_, \_\_\_–\_\_\_ (2013) (slip op., at 13–14). "We have previously warned against courts' determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record." *Shinseki* v. *Sanders*, 556 U. S. 396, 407 (2009) (citing *Kotteakos* v. *United States*, 328 U. S. 750, 760 (1946)). Instead of relying on presumptions, a court of appeals must "engage in [a] full-record assessment" to determine whether a defendant who forfeited a claim of Guidelines error has met his case-specific burden of showing of prejudice. *Davila*, *supra*, at \_\_\_ (slip op., at 14). The answer may be affected by a variety of factors, including any direct evidence, the nature and magnitude of the error, the sentencing judge's view of the Guidelines,[1] the

———————

[1] See, *e.g.*, United States Sentencing Commission, Report on the Continuing Impact of *United States* v. *Booker* on Federal Sentencing 3 (2012) (*Booker* Report) ("[T]he Commission's analysis of individual judge data showed that the identity of the judge has played an increasingly important role in the sentencing outcomes in many districts"); Bowman, Dead Law Walking: The Surprising Tenacity of the Federal Sentencing Guidelines, 51 Houston L. Rev. 1227, 1266 (2014) ("Inter-Judge Disparity Has . . . Increased Since *Booker*"); Scott, Inter-Judge Sentencing Disparity After *Booker*: A First Look, 63 Stan. L. Rev. 1, 30 (2010) ("[I]n their guideline sentencing patterns, judges have responded

approach of the circuit in question,[2] and the particular crime at issue.[3]

Under the specific circumstances here, Molina-Martinez met his burden. As the Court points out, Molina-Martinez demonstrated that the Guidelines "were the focal point for the proceedings"; that "[t]he 77-month sentence the District Court selected is conspicuous for its position as the lowest sentence within what the District Court believed to be the applicable range"; and that "the District Court's selection of a sentence at the bottom of the range, despite the Government's request for the maximum Guidelines sentence, 'evinced an intention . . . to give the minimum recommended by the Guidelines.'" *Ante*, at 13. This evidence establishes a "reasonable probability that the District Court would have imposed a different sentence had it known that 70 months was in fact the lowest sentence the Commission deemed appropriate." *Ibid.*

In concluding otherwise, the Fifth Circuit applied exactly the sort of strict, categorical rule against which we have warned. Under the Fifth Circuit's approach, Molina-Martinez could not satisfy his burden with circumstantial evidence regarding the parties' sentencing arguments or the District Court's selection of a sentence at the very bottom of the range. See 588 Fed. Appx. 333, 335 (CA5

———————

in starkly different ways to *Booker*, with some following a 'free at last' pattern and others a 'business as usual' pattern").

[2] See, *e.g.*, *Booker* Report 6 ("The influence of the guidelines . . . has varied by circuit"); Bowman, *supra*, at 1261 ("Different Districts Have Had Very Different Post-*Booker* Experiences"); Yang, Have Interjudge Sentencing Disparities Increased in an Advisory Guidelines Regime? Evidence from *Booker*, 89 N. Y. U. L. Rev. 1268, 1277, 1319–1323 (2014) (presenting "evidence of substantial interdistrict differences in sentencing outcomes").

[3] See, *e.g.*, *Booker* Report 5 ("The influence of the guidelines . . . has generally remained stable in drug trafficking, firearms, and immigration offenses, but has diminished in fraud and child pornography offenses").

2014) (*per curiam*). Rather, the Fifth Circuit would require a defendant to produce direct evidence, such as an "explicit statement suggesting that the Guidelines range was a primary factor in sentencing." *Ibid.* But there is no good reason to preclude defendants from showing prejudice via the type of circumstantial evidence at issue here. As this case illustrates, the manner in which a district court applies an incorrect Guidelines range can itself serve as evidence of an effect on substantial rights. I thus concur in the Court's opinion insofar as it rejects the Fifth Circuit's misguided approach and finds that Molina-Martinez demonstrated a reasonable probability of a different sentence absent the Guidelines error.

## II

I cannot, however, join the Court's dicta speculating that "most" defendants who forfeit a Guidelines error will be able to show a reasonable probability of prejudice. *Ante*, at 9, 11, 15. Things may turn out that way, but I see no reason to prejudge an empirical question that is unnecessary to our decision in this case and that will be worked out by the lower courts on a case-by-case basis.[4]

––––––––––

[4] Some of the Court's dicta could perhaps be interpreted not as predictions, but as instructions to lower courts to side with the forfeiting defendant unless the Government can point to "unusual circumstances." See *ante*, at 11–12 ("[I]n the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder. Absent unusual circumstances, he will not be required to show more"). For several reasons, however, I do not think the opinion can be fairly viewed as requiring such a result. First, the Court makes clear that today's decision does *not* shift the burden of persuasion from a forfeiting defendant to the Government. See *ante*, at 14 (Under Rule 52(b), "'[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice,'" and "[t]he holding here does not" shift the burden). Second, the opinion acknowledges that a "court's reliance on an incorrect range" will not always "suffice to show an effect on the defendant's substantial rights"—even where "the

The Court's proclamations about what will occur in "most" cases are based on Sentencing Commission statistics indicating that the Guidelines tend to influence sentences. See *ante*, at 10. Perhaps these statistics are probative of the Guidelines' current impact on sentencing. But they provide an unstable and shifting basis for the Court's prophecies about the future. The Guidelines are now entirely advisory, see *United States* v. *Booker*, 543 U. S. 220, 245 (2005), and in time the lower courts may increasingly drift away from the Guidelines and back toward the sentencing regime that prevailed prior to their issuance.[5] As circumstances change, and as judges who

_____

record is silent as to what the district court might have done had it considered the correct Guidelines range." *Ante*, at 11. It follows that even where the Government fails to identify *any* direct evidence of harmlessness, the defendant cannot automatically satisfy his burden simply by pointing to the application of an incorrect Guidelines range. Instead of employing a strict presumption against the Government, the Court emphasizes, "a reviewing court must consider the facts and circumstances of the case before it." *Ibid.*; see also *ibid.* ("'Our essential point is that particular facts and circumstances matter'" (quoting *United States* v. *Davila*, 569 U. S. ___, ___ (2013) (slip op., at 13))). Given these caveats, I do not read the Court's opinion as replacing the Fifth Circuit's inflexible pro-Government presumption with an equally inflexible pro-defendant presumption. Rather, I take the Court at its word: "The decision today simply states that courts reviewing sentencing errors cannot apply a categorical rule requiring additional evidence in cases, like this one, where the district court applied an incorrect range but nevertheless sentenced the defendant within the correct range." *Ante*, at 14.

[5]See, *e.g.*, Assessing *Booker* and Its Aftermath, Practice Under the Federal Sentencing Guidelines §1.02(C)(1), pp. 1–14 to 1–16 (D. Debold ed., 5th ed. 2016) (Debold) ("Since the first weeks after *Booker*, district courts have been engaged in a dynamic debate over the precise weight to be given the now advisory Guidelines," and "there are reasons to expect continued evolution in sentencing norms"); *id.*, §1.02(C)(2) ("[D]istrict courts can be expected to continue to test the boundaries of their discretion. . . . Accordingly, while it is clear that district courts now enjoy more discretion at sentencing, the proper bounds of that discretion will continue to be explored").

spent decades applying mandatory Guidelines ranges are replaced with new judges less wedded to the Guidelines, the statistics underlying the Court's forecasts may change dramatically.[6]  Because I cannot join the Court's questionable predictions, I concur only in part and in the judgment.

——————

[6] See, *e.g.,* Yang, 89 N. Y. U. L. Rev., at 1277 (finding that "Judges who have no prior experience sentencing under the mandatory Guidelines regime are more likely to depart from the Guidelines-recommended range than their pre-*Booker* counterparts, suggesting that newer judges are less anchored to the Guidelines"); *id.*, at 1318–1319 ("The 'anchor' effect of the Guidelines sentence may be more prominent for pre-*Booker* appointees because these judges are more acculturated to and experienced with constraining their sentences to the dictates of the Guidelines.  In contrast, the 'anchor' effect is less prominent for post-*Booker* appointees.  These potential anchoring differences . . . may 'increase as the years go by and the bench is filled with individuals who have no history with binding guidelines'"); see also, *e.g.*, Debold §1.02(C)(1), at 1–16 ("Sentencing judges, particularly more recent appointees, are also growing increasingly skeptical of the Guidelines as they become more comfortable viewing the Guidelines as advice and look deeper into the reasoning supporting (or failing to support) the Guidelines' recommendations"); Gertner, Supporting Advisory Guidelines, 3 Harv. L. & Pol'y Rev. 261, 270 (2009) (describing continued Guideline sentencing as the result of "the habits ingrained during twenty years of mandatory Guideline sentencing"); Stith, The Arc of the Pendulum: Judges, Prosecutors, and the Exercise of Discretion, 117 Yale L. J. 1420, 1496–1497 (2008) ("[A]s a new generation of prosecutors and judges enters into service, the pendulum may swing back toward the local exercise of informed discretion, if *Booker* lasts that long.  But incumbent sentencing decision makers may be reluctant to regard as unreasonable the sentences they were obliged to seek and impose for two decades under the command and the conceit of law").