ROSENBAUM, Circuit Judge,
with whom JILL PRYOR, Circuit Judge, joins,
concurring:
Imagine a sentencing guideline that read, “A defendant is a career offender if ‘[pjuddles do not ask for why not? It is cheese! Breath and wind. It is cheese.’ ” Boston Legal, “Word Salad Days” (2006), http://www.imdb.com/title/tt0770843/quotes (last visited Apr. 28, 2016). Now imagine that based on the Guidelines range that that indecipherable language required, a district court sentenced a defendant to twice as much time as it otherwise would have. How could the sentencing court know that the guideline applied? How could the reviewing court know that the correct Guidelines calculation included an enhancement under that guideline? Surely doubling a defendant’s sentence based on nonsense would violate due process. But in United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015), we allowed defendants to continue to be sentenced to much more severe sentences than they would otherwise receive, based on the residual clause of the career-offender guideline, a guideline that the Supreme Court has found hardly more scrutable than the hypothetical one above.
- No doubt criminal defendants do not have a due-process right to a sentence within a particular Sentencing Guidelines range. But Congress can, and essentially has, required courts 'to begin the sentencing process by correctly calculating the Guidelines range. The question here is whether, when the Supreme Court strikes language from a statute because it is unconstitutionally vague language and that same language also appears in a guideline, we are constitutionally able to continue to apply that language in the sentencing process that Congress has mandated. The answer, unlike the challenged part of the career-offender guideline, is clear: we are not.
I concur in all but Section I.A of Judge Martin’s well-reasoned concurrence. I agree that the Supreme Court’s decision in Johnson v. United States, 576 U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), holding the Armed Career Criminal Act’s (“ACCA”) residual clause unconstitutional *1268 ly vague renders the exact same language in the Sentencing Guidelines unconstitutional as well.
I.
In Matchett, 802 F.3d 1185, the panel reached the opposite conclusion because it held that the vagueness doctrine does not apply to the Sentencing Guidelines. 802 F.3d at 1193-95. To reach that result, the panel first described the vagueness doctrine as “resting] on [a] lack of notice.” Id. at 1194 (quoting Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988)). Then, the panel construed Irizarry v. United States, 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008), as precluding due-process challenges to, essentially, anything having to do with sentencing under ,the Guidelines, based on the Supreme Court’s remark that that “[a]ny expectation subject to due process protection ... that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive our decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which invalidated the mandatory features of the Guidelines.” Matchett, 802 F.3d at 1194 (quoting Irizarry, 553 U.S. at 713, 128 S.Ct. at 2202). Finally, the panel quoted the Eighth Circuit’s decision in United States v. Wivell, 893 F.2d 156, 160 (8th Cir. 1990), for the proposition that “[bjecause there is no constitutional right to sentencing guidelines ... the limitations the Guidelines place on a judge’s discretion cannot violate a defendant’s right to due process by reason of being vague.” Matchett, 802 F.3d at 1194-95 (quoting Wivell, 893 F.2d at 160).
A.
The problem with the first part of the panel’s analysis — that the vagueness doctrine “rest[s] on [a] lack of notice” — is that it is incomplete. The vagueness doctrine also protects against arbitrary enforcement by judges. Indeed, in Johnson itself the Supreme Court held that the ACCA equivalent of the 13 words at issue here violated due process because it “both denies fair notice to defendants and invites arbitrary enforcement by judges.” Johnson, 135 S.Ct. at 2557 (emphasis added).
B.
As for the second part of the panel’s analysis — that Irizarry precludes due-process challenges to all forms of sentencing error under the Guidelines — I respectfully disagree. In Irizarry, under the advisory Guidelines, a defendant was sentenced above the correctly calculated Guidelines range. 553 U.S. at 712, 128 S.Ct. at 2201. He asserted that his due-process rights had been violated because the sentencing court varied upwards from the Guidelines range without providing him with prior notice. See id. The Supreme Court rejected his argument, explaining that under the advisory Guidelines, “neither the Government nor the defendant may place the same degree of reliance on the type of ‘expectancy’ [of a given sentence] that gave rise to a special need for notice [when the Guidelines were mandatory and the sentencing court departed from them].” Id. 553 U.S. at 713-14, 128 S.Ct. at 2202.
Put simply, Irizarry stands for only the proposition that a defendant has no due-process interest in receiving a sentence within the Guidelines range. But Irizarry says nothing about whether a defendant has a due-process right to a correct and fair sentencing process under the Sentencing Guidelines. And while the Supreme Court has not expressly spoken to such a right, the Court’s recent decisions strongly indicate that the right exists.
For starters, in Molina-Martinez v. United States, 578 U.S. -, 136 S.Ct. 1338, 194 L.Ed.2d 444 (2016), the Supreme Court recently explained that a district *1269 court that “improperly calculates]” a defendant’s Guidelines range makes a “significant procedural error,” id. at 1346 (quoting Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)) (quotation marks omitted) — so “particularly serious,” id. in fact, that the error generally qualifies in its own right as having “affected the defendant’s substantial rights.” Id.[1]
And that is not surprising, given that the Supreme Court has established that a correct and fair sentencing process necessarily begins with the correct calculation of the Guidelines range. Gall v. United States, 552 U.S. 38, 50 & n. 6, 128 S.Ct. 586, 596 & n. 6, 169 L.Ed.2d 445 (2007). Indeed, the Supreme Court has instructed that under 18 U.S.C. § 3553(a), “district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.” Id. at 50 n. 6, 128 S.Ct. at 596 n. 6 (emphasis added); see Peugh v. United States, 569 U.S. -, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013) (same). The correct Guidelines calculation “anchor[s] both the district court’s [sentencing] discretion and the appellate review process.” Peugh, 133 S.Ct. at 2087.
In other words, the Supreme Court has acknowledged that Congress has effectively legislated the requirement that a sentencing court start the sentencing process by first correctly calculating the Guidelines range. That makes § 3553(a) a “statute[ specifying the procedure for] fixing sentences.” See Johnson, 135 S.Ct. at 2556-57 (holding that the vagueness doctrine applies to statutes fixing sentences). So to the extent that, as a part of the statutorily mandated sentencing process, § 3553(a) requires courts in calculating the Guidelines range to use a guideline that is “so standardless that it invites arbitrary enforcement,” the guideline must be struck down. See id. Failure to do so would render the sentencing process that § 3553(a) requires — determining the correct calculation of the Guidelines range — violative of due process because no court could reliably ascertain the correct calculation of the Guidelines range.
That is exactly the problem that the challenged language of the career-offender guideline presents. How can a sentencing court correctly calculate the Guidelines range when it is forced to apply the “hopelessly] indetermina[te]” language of the career-offender guideline? Johnson, 135 S.Ct. at 2448. Courts had “trouble making sense” of the very same words when they tried to apply them under the ACCA’s residual clause. Id. at 2559-60. The Supreme Court observed that “[n]ine years’ experience trying to derive meaning from the residual clause eonvince[d it] that [it] ha[d] embarked upon a failed enterprise.” Id. at 2560. This “ ‘black hole of confusion and uncertainty’ that frustrates any effort to impart ‘some sense of order and direction,’ ” id. at 2562 (quoting United States v. Vann, 660 F.3d 771, 787 (4th Cir. 2011) (Agee, J., concurring)), does not somehow magically become clearer or more meaningful because the words appear in the guideline, rather than in the ACCA.
Because of this muddle, a sentencing court cannot ascertain whether the challenged part of the career-offender guideline even applies when the guideline is raised, so the court necessarily cannot correctly calculate the Sentencing Guidelines range. As a result, the sentencing court *1270 cannot comply with the sentencing process’s virtual statutory requirement that the sentencing court first correctly calculate the applicable Guidelines range.
And the confusion only grows on appeal. Determining whether a sentence imposed by a district court was procedurally reasonable requires appellate courts to first ascertain whether the district court correctly calculated the applicable Guideline range. But we are no more skilled in applying “hopelessly] indetermina[te]” language than district courts.
C.
Finally, with regard to the third part of the Matchett panel’s analysis — that the Sentencing Guidelines cannot be challenged as vague because no constitutional right to sentencing guidelines exists — I again respectfully disagree. True, “legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases.” Lockett v. Ohio, 438 U.S. 586, 603, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). But legislatures cannot, as Matchett would apparently hold, cabin the sentencing discretion of judges by mandating that they calculate a defendant’s sentence using unconstitutionally vague language.
This would be another case entirely if sentencing judges could choose to wholly disregard the unconstitutionally vague career-offender guideline in calculating sentences. They cannot. Instead, district courts must begin the sentencing process by correctly calculating a defendant’s Guidelines range. Peugh, 133 S.Ct. at 2083. Under Matchett, that means that Congress has essentially required district courts to apply unconstitutionally vague language in sentencing defendants. But it could not do that. Due process may not require sentencing guidelines, but it does prohibit Congress from requiring judges to apply unconstitutionally vague language in correctly calculating a defendant’s sentence under any guidelines it chooses to enact.
II.
At bottom, statutorily, courts are required to begin every sentencing by correctly calculating the Guidelines range. Yet the Supreme Court has recognized that courts cannot reliably know whether the challenged language of the career-offender Guideline applies in any given case. As a result, they cannot possibly know whether a correct calculation of the Guidelines range should or should not include such an enhancement. But in Matchett, we nonetheless required sentencing courts to impose the enhancement and ourselves to uphold it, anyway. Trying to divine meaning from the word salad that is the challenged portion of the career-offender guideline guarantees an arbitrary and unfair sentencing process in violation of due process. For these reasons, I respectfully disagree with our holding in Matchett.

. If the Guidelines calculation error in Molina-Martinez that resulted in a difference of 7 months' imprisonment on the low end of the Guidelines range constitutes a “significant procedural error,” so too must an error in the application of the career-offender Guideline, which can double and sometimes even triple the otherwise-applicable Guidelines range.