NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUN 20 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-30014 |
| Plaintiff-Appellee, | D.C. No. 3:15-cr-00008-SLG-2 |
| v. | |
| DARREN K. BYLER, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Submitted June 13, 2018**
Anchorage, Alaska

Before: THOMAS, Chief Judge, and CALLAHAN and BEA, Circuit Judges.

Darren Byler appeals from his convictions for violating the Refuse Act, 33

U.S.C. §§ 407, 411, and making a false statement during the course of the

investigation, 18 U.S.C. § 1001. We have jurisdiction, and we affirm.

Byler does not contest that sewage from his vessel, the *Wild Alaskan*, was

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

discharged directly into Kodiak Harbor or that he provided false statements to government officials about the dumping. Instead, Byler challenges his convictions by arguing that (1) the Refuse Act does not criminalize the dumping of "sewage"; (2) the Refuse Act permits "de minimis" deposits; and (3) his prosecution was the result of selective enforcement as he was targeted for exercising his First Amendment right of freedom of expression in operating a strip club. Because Byler raises these arguments for the first time on appeal, they are subject to plain error review. *See United States v. Olano*, 507 U.S. 725, 731 (1993) ("Federal Rule of Criminal Procedure 52(b), which governs on appeal from criminal proceedings, provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court.").

The Refuse Act broadly prohibits "deposit[ing]" into navigable waters "any refuse matter of any kind or description" "other than that flowing from streets and sewers and passing therefrom in a liquid state." 33 U.S.C. § 407; *see also United States v. Standard Oil Co.*, 384 U.S. 224, 229 (1966) ("More comprehensive language would be difficult to select."). Citing *United States v. Republic Steel Corp.*, 362 U.S. 482, 490–91 (1960), Byler interprets the exception as permitting his dumping of human waste from the *Wild Alaskan* into the harbor. We disagree.

The defendant in *Republic Steel Corp.* operated mills on a riverbank and deposited "industrial waste containing various solids" into the river to raise the

2

riverbed by several feet. 362 U.S. at 483. The Court rejected the defendant's argument that the exception applied because the industrial waste was deposited through sewers: "Refuse flowing from 'sewers' in a 'liquid state' means to us 'sewage.'" *Id.* at 490. The Court thus declined "the invitation to broaden the exception," limiting the "sewers" exception to sewage *flowing from sewers*. *Id.* Byler's conduct in dumping human waste directly from the *Wild Alaskan* into the harbor is not permitted under the Refuse Act.

Byler's "de minimis" argument fails for at least three reasons. First, the Refuse Act contains no exception for de minimis deposits. *See* 33 U.S.C. § 407. Second, because Byler failed to raise this argument at trial, he should prevail only if the asserted error was so obvious that the district court should have raised the issue sua sponte. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) ("[T]he error must be plain—that is to say, clear or obvious."). It is not obvious that de minimis discharges are exempted. Third, substantial evidence supports a conclusion that Byler discharged thousands of gallons of raw sewage into the harbor. That amount is not de minimis under any standard. The prosecution presented evidence—from Byler's own documentation—that the *Wild Alaskan* generated thousands of gallons of sewage during its operation as well as evidence from which the jury could have concluded that all such sewage was unlawfully discharged. Contrary to Byler's suggestion, the discharge of thousands

3

of gallons of sewage is not rendered de minimis simply because the sewage may have been discharged one flush at a time. (At least one toilet on the vessel was plumbed to send sewage directly overboard.)

Byler's argument that he was targeted for exercising his First Amendment rights fails to meet the "demanding" standard for proving discriminatory effect and motive. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 920 (9th Cir. 2012) (en banc). Byler identified no instance of another vessel dumping raw sewage into the harbor without being prosecuted. Besides speculation and a list of rhetorical questions, the only support Byler offered for his First Amendment argument is his mischaracterization of a conversation between himself and a prosecution witness from the Harbormaster's office. The witness testified that, in his conversation with Byler, Byler suggested that "he was being investigated for a sewage discharge, but this is something that happens all the time in the harbor, basically. Other boats do it. And that if he's being investigated, everybody else in the harbor should be investigated." By recounting Byler's suggestion that "other boats do it," the witness did not adopt or otherwise legitimize Byler's unsubstantiated view. The most obvious explanation for any scrutiny Byler received was that he was operating the only business in the harbor with a steady flow of patrons aboard the vessel at a time when city officials were particularly concerned about sewage overflowing into the harbor.

**AFFIRMED.**