[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15094
_____

D.C. Docket No. 1:15-cr-00180-WSD-GGB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MANUEL TIRADO-YERENA,
a.k.a. Manuel Yerena,
a.k.a. Manuel Yerena-Tirado,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 22, 2017)

Before WILSON and BLACK, Circuit Judges, and RESTANI,[*] Judge.

BLACK, Circuit Judge:

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Manuel Tirado-Yerena (Tirado) appeals his 25-month sentence for illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).  Tirado asserts the district court erred in enhancing his sentence eight levels under U.S.S.G. § 2L1.2(b)(1)(C) (2014).[1]  This guideline increases a defendant's offense level by eight points "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for an aggravated felony."  Tirado contends his two prior Georgia convictions for entering an automobile, O.C.G.A. § 16-8-18, do not qualify as aggravated felonies under 8 U.S.C. § 1101(a)(43)(G).  After review, we conclude that we need not determine whether Tirado's prior convictions qualify as aggravated felonies because any potential error in the calculation of Tirado's Guidelines range was harmless.

## I.  BACKGROUND

Tirado pled guilty to illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).  According to the presentence investigation report (PSI), after he was arrested for theft by taking, Tirado was identified as an illegal alien who was previously deported in 2011 after sustaining a conviction for entering an automobile with intent to commit a theft.

In preparing the PSI, the probation officer calculated a base offense level of 8, pursuant to § 2L1.2.  The probation officer then applied an 8-level enhancement

---

[1]  Tirado was sentenced pursuant to the November 1, 2014 Guidelines Manual.  All citations to the Guidelines are to the 2014 Sentencing Guidelines.

2

under §2L1.2(b)(1)(C) because Tirado was previously deported subsequent to an aggravated felony conviction. The probation officer identified two prior convictions for entering an automobile with intent to commit a theft as qualifying aggravated felonies. Tirado received a 3-level reduction for acceptance of responsibility under § 3E1.1, bringing his total offense level to 13. Tirado had a criminal history category of IV, and, with a total offense level of 13, his resulting Guidelines range was 24 to 30 months' imprisonment. The statutory maximum sentence was 20 years.

The PSI summarized Tirado's qualifying convictions for "entering an automobile." In 2007, Tirado pled guilty to the Georgia offense of entering an automobile. The indictment charged that Tirado entered an automobile with intent to commit a theft. Four years later, in 2011, Tirado pled guilty to another count of the same offense. That indictment charged that Tirado unlawfully entered a truck with the intent to commit a theft.

In his amended sentencing memorandum, Tirado argued his prior convictions for entering an automobile did not qualify as aggravated felonies, and thus the 8-level enhancement under § 2L1.2(b)(1)(C) was inappropriate. Instead, Tirado argued his prior convictions qualified him only for a 4-level enhancement under § 2L1.2(b)(1)(D), which provides an enhancement for "a conviction for any other felony." Applying a 4-level enhancement under § 2L1.2(b)(1)(D) to the base

3

offense level of 8 would result in an adjusted offense level of 12. Under § 3E1.1, Mr. Tirado would then receive only a 2-level adjustment for his acceptance of responsibility, yielding a total offense level of 10. With a criminal history category of IV, his Guidelines range would be 15 to 21 months' imprisonment. The Government responded that both convictions qualified as aggravated felonies.

Prior to sentencing, the court issued an order finding Tirado's offenses qualified as aggravated felonies, and that he was subject to the 8-level enhancement under § 2L1.2(b)(1)(C). Tirado filed a motion requesting the court reconsider its order overruling his objection to the enhancement, and requested the court consider his argument at sentencing.

At sentencing, the court agreed to reconsider its order. After hearing argument from both sides, the court overruled Tirado's objection, reaching the same conclusion as in its prior order and imposing the 8-point enhancement. In its reasoning, the district court noted:

> Whether or not this is a four-point or eight-point adjustment, I am always able to go back and look at the underlying offenses and the defendant's conduct and apply the 3553 factors, whether or not his conduct in the past, and it's not good in this case, warrants we see what it is when he came back to the country illegal, he did come back illegally, he was here, and that is always a matter since the guidelines are not binding and I can take that into consideration.
>
> I think the guidelines just give you a way and a process by which the commission wants me to do which is to evaluate all of the facts and circumstances and the conduct of the defendant in reaching a reasonable sentence.

4

The court adopted the Guidelines range in the PSI, finding Tirado's total offense level was 13 and his criminal history category was IV, resulting in a Guidelines range of 24 to 30 months' imprisonment.  The court then listened to arguments for extenuation and mitigation.  Tirado argued in mitigation that certain of the § 3553(a) factors, including reducing unwarranted sentencing disparities and the history and characteristics of the defendant, specifically the unsupportive environment and abject poverty in which he was raised, supported a below-Guidelines sentence.  In turn, the Government argued for a sentence at the middle of Tirado's advisory Guidelines range.  The Government reasoned that Tirado's history and characteristics, his need for deterrence, and the need to promote respect for the law supported a mid-Guidelines range sentence, given that this was the seventh occasion on which Tirado was found unlawfully in the United States.

In imposing the sentence, the district court detailed its reasoning:

> [T]here are a number of things I have already pointed out about your conduct which makes you very different than most people that have appeared before me on this kind of violation, and I very seldom have people who have the number of repeated re-entries after being removed by authorities as you have.  I have fewer people that, when they re-entered the United States, that engage in conduct that you've engaged in which is not lawful.  There is a consistent theme about your conduct once you are here and when you decide to return here, and that consistent theme is that you cannot comply with the authority of either our states, in this case the state of Georgia, or Federal authorities.  We know that you were told repeatedly that you could not come back into the United States. . . .
>
> What is also interesting is that when you committed offenses

5

here, and you knew that you were under the supervision of the authorities of those courts, you were not able to comply with those authorities either.  So the theme is that not only—and the pattern that you have exhibited really goes well beyond what has been acknowledged and admitted by your counsel, which is that you knew that you couldn't come back and you did, you were told repeatedly as the Government escalated its response to you, allowed you first to be returned voluntarily, and then finally taking more formal action against you, each time you knew that when you were returned back to your country that you were not allowed to come.  And then finally, after the number of times that they tried to get the message across to you, after you having not been able to even comply with the message that if you are here you have to live lawfully, finally you are prosecuted. . . .

[T]he criteria that are in 3553, the responsibility of a sentence is to promote respect for the law.  You have proven that respect for the law needs to be promoted within you because you have been unable to comply and conform your conduct to the law as it relates to entering the country and living lawfully once you are here, and even then, when prosecuted by state authorities, abiding by the rules and regulation of probation which you have been unable to do.  And I think at least on two occasions your probation was revoked.

Adequate deterrence.  There are two kinds of deterrence.  I am convinced to a certainty that based upon your pattern and really fairly weak reasons for you to come into the United States after having been repeatedly told that you can't is that you need to be deterred.  It is always the case, there is not a single defendant that appears in a case like this that doesn't say they have learned their lesson and they won't come back.  And I have lots of examples of people who have told me that sitting in that chair . . . and they end up returning.  I think that is a significant risk for you, considering this pattern and the manner in which you have been treated by immigration authorities, which has been from lenient to being aggressively more severe, to this finally having to get your attention by prosecuting you.  You need to get the message and be deterred not to come to the United States.  And frankly we need to let other people that you will see in Mexico, or they are thinking about what happened to you, that if you come back seven times there is a consequence to that, and that consequence is

6

one of incarceration.  So deterrence is not just for you, but it is for others as well.  And this particular case, considering your conduct, really really warrants that.

Another is to protect the public from future crimes.  And we know that even when you are here, one way of getting your attention and encouraging you not to come back is when you come back I know that you commit crimes, and the public is entitled to be protected from that.

So considering all of the 3553 factors, including the nature and circumstances of this very offense, and your history and characteristics as well as those that are to be considered by me in connection with imposing a reasonable sentence, I think the sentence in this case is one, the one I intend to impose, is one that completely complies with and takes into account and maybe even compelled by the 3553 factors.

The court then imposed a sentence of 25 months' imprisonment and three years' supervised release.  The court then stated:

I said I have considered the factors under 3553(a), and believe that this is one of those cases where it has actually compelled a sentence of this sort.  I think, and I have not often done this, but I want this to be known to the Circuit.  That having considered all the circumstances of your conduct and your conduct in the United States when you have returned here, that under the 3553 factors, considering your repeated conduct in returning to the United States, of committing crimes once you are here, and then not abiding by the terms of supervision under the State authorities, that under the circumstances of this case and under the 3553 factors, that even if I am wrong, under the guidelines, which I believe I am not, and specifically whether or not that eight-point enhancement applies or not, that this is the sentence that I would impose in this case because of your conduct and the history that you've exhibited.  So that is the sentence I intend to impose.

7

Tirado served his custodial sentence. The Bureau of Prisons released him into the custody of the Department of Homeland Security, Immigration and Customs Enforcement (ICE) in January 2017. ICE removed Tirado from the United States to Mexico in February 2017.[2]

## II.  DISCUSSION

Federal Rule of Criminal Procedure 52(a), entitled "Harmless Error," provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  Affecting substantial rights "[i]n most cases . . . means that the error must have been prejudicial:  It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).  If a defendant makes a timely objection to an alleged error and Rule 52(a) applies, this Court engages in an analysis of the district court record to determine whether the error was prejudicial. *Id.*  Rule 52(a) precludes error correction only if the error "does not affect substantial rights." *Id.* at 735.

As detailed above, Tirado made a timely objection to the imposition of the 8-point enhancement, and thus we must correct any error in imposing that enhancement unless the error does not affect substantial rights. *Id.*  The Supreme Court held, in the context of reviewing whether a defendant's substantial rights

---

[2]  This case is not rendered moot by Tirado's deportation as he is still serving a three-year term of supervised release. *See United States v. Orrega*, 363 F.3d 1093, 1095-96 (11th Cir. 2004); *Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995).

were affected under plain error review,[3] that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Thus, the Supreme Court explained that an incorrect calculation of a Guidelines range will almost always affect a defendant's substantial rights; however, the Court left open the possibility that "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." *Id.* at 1346.

Tirado's sentencing transcript shows that even assuming, *arguendo*, the district court erred in imposing the 8-level enhancement, "a reasonable probability of prejudice does not exist." *Id.* In fact, the example of "a reasonable probability" that no prejudice exists cited by the Supreme Court is the exact situation we have in this case:

> The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate. And that explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines. The

---

[3] Federal Rule of Criminal Procedure 52(b), entitled "Plain Error," provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

> Government remains free to poin[t] to parts of the record—including relevant statements by the judge—to counter any ostensible showing of prejudice the defendant may make.

*Id.* at 1346-47 (quotation omitted).

The district judge made clear that he would impose the same 25-month sentence absent the 8-level enhancement. The district judge knew he could be imposing an upward variance from the Guidelines range, and thoroughly explained his reasons for doing so. Despite Tirado's protestations that a district judge's explanation that he would impose the same sentence independent of the Guidelines calculation effectively insulates the sentence from review, the Supreme Court expressly allowed for such an explanation to factor into harmless error review in *Molina-Martinez.* 136 S. Ct. at 1346.

Moreover, our Court has encouraged district courts with disputed Guidelines issues to state on the record if the ultimate resolution of the issue does not affect the sentence imposed. *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). We explained "pointless reversals and unnecessary do-overs of sentence proceedings can be avoided if district courts faced with disputed guidelines issues state that the guidelines advice that results from decision of those issues does not matter to the sentence imposed after the § 3553(a) factors are considered." *Id.* (quotation omitted). However, the district court's mere statement it would impose the same sentence regardless of the disputed Guidelines issue is not enough to

10

show harmless error; "the sentence imposed through the alternative or fallback reasoning of § 3553(a) must [also] be reasonable." *Id.*

In determining whether the sentence is reasonable, "we must assume that there was a guidelines error—that the guidelines issue should have been decided in the way the defendant argued and the advisory range reduced accordingly—and then ask whether the final sentence resulting from consideration of the § 3553(a) factors would still be reasonable." *Id.*

Our reasonableness review takes into account the § 3553(a) factors and the advisory Guidelines range. *Id.* at 1350. The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2). 18 U.S.C. § 3553(a). In imposing Tirado's sentence, the district judge specifically discussed promoting respect for the law, adequate deterrence, and protecting the public from future crimes. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). The district judge also considered the nature and circumstances of the offense and the history and characteristics of the defendant, noting Tirado's repeated reentries into the United States and disregard for the law while in the United States. *See* 18 U.S.C. § 3553(a)(1). As stated previously, without the 8-point enhancement, Tirado's advisory Guidelines range would have been 15 to 21 months' imprisonment, and his statutory maximum was 20 years' imprisonment. Given the circumstances, a 25-month sentence is not unreasonable whether the Guidelines

11

range is 15 to 21 months or 24 to 30 months.  *See Keene*, 470 F.3d at 1350.

### III.  CONCLUSION

We conclude that even if there was a misapplication of the §2L1.2(b)(1)(C) enhancement, "a reasonable probability of prejudice does not exist."  *See Molina-Martinez*, 136 S. Ct. at 1346.  Tirado's 25-month sentence is reasonable, and the district court set forth sufficient reasons for that sentence irrespective of the Guidelines range.  We affirm Tirado's sentence.

**AFFIRMED**

WILSON, Circuit Judge, concurring:

I concur with the majority and write separately to respond in more depth to the government's argument that Tirado-Yerena's deportation moots this appeal. Tirado-Yerena was deported after his custodial sentence but before his supervised release. Thus, the mootness inquiry here comprises two questions: (1) whether Tirado-Yerena's challenge to his expired custodial sentence is moot and (2) whether either the expiration of Tirado-Yerena's custodial sentence or his deportation moots his challenge to the supervised release. Because I answer the second question in the negative, I concur with the majority's decision to consider the merits of this appeal.

## A. Custodial Sentence

Tirado-Yerena's challenge to his expired custodial sentence is moot. Mootness, like standing, derives from Article III, Section 2 of the Constitution, which limits a court's power to the adjudication of a case or controversy. "Throughout the litigation, the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the [other party] and likely to be redressed by a favorable judicial decision." *United States v. Juvenile Male*, 564 U.S. 932, 936, 131 S. Ct. 2860, 2864 (2011) (per curiam) (internal quotation marks omitted). "[A] case is moot when the issues presented are no longer live or

13

the parties lack a legally cognizable interest in the outcome." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 212, 120 S. Ct. 693, 721 (2000) (internal quotation marks omitted). To overcome a claim of mootness, a defendant who wishes to continue challenging a conviction for which he has finished serving a sentence must show that he suffers from a "collateral consequence" of his conviction; if the defendant challenges the expired sentence, a "collateral consequence" of his sentence. *Juvenile Male*, 564 U.S. at 936, 131 S. Ct. at 2864.

We presume that a conviction has collateral consequences. *Id.*; *see also Sibron v. New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 1899 (1968) ("The Court thus acknowledged the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences."). Thus, if a defendant challenges his conviction, we presume that the appeal is not moot. *See Juvenile Male*, 564 U.S. at 936, 131 S. Ct. at 2864. However, no such presumption exists for a defendant who challenges his sentence, not his conviction. The burden of proving a "collateral consequence" of the expired sentence remains with the defendant. *Id.* And "the most generalized and hypothetical of consequences" are insufficient to meet this burden. *See Spencer v. Kemna*, 523 U.S. 1, 10, 118 S. Ct. 978, 984 (1998). The collateral consequence must be "an actual injury traceable to the [sentence] and likely to be redressed by a favorable" outcome on appeal. *See*

14

*Juvenile Male*, 564 U.S. at 936, 131 S. Ct. at 2864 (internal quotation marks omitted).

Because Tirado-Yerena challenges his sentence, he bears the burden of proving some collateral consequence of his expired custodial sentence. Tirado-Yerena argues that his lengthy custodial sentence was based on a finding that he committed an "aggravated felony," a finding which "would have collateral consequences for the appellant in any future efforts to obtain relief through the immigration courts." Under the 2014 Sentencing Guidelines, the sentencing court had imposed an enhancement based on a finding that Tirado-Yerena committed an "aggravated felony"—a term that borrowed its definition from the Immigration and Nationality Act. U.S.S.G. § 2L1.2(b)(1)(C) (2014); 8 U.S.C. § 1101(a)(43).

However, Tirado-Yerena's hypothetical "relief through the immigration courts" is too speculative to sustain a "collateral consequence." Tirado-Yerena has been granted voluntary departure four times and has been deported twice. After serving his custodial sentence, Tirado-Yerena was deported under 8 U.S.C. § 1231(a)(5), which reinstates a "prior order of removal" if the "alien has reentered the United States illegally after having been removed or having departed voluntarily." Tirado-Yerena's receiving "relief through the immigration courts" is highly unlikely as it stands.

15

Also, he fails to explain the type of relief he would seek "through the immigration courts" and how the sentencing court's finding of "aggravated felony" would influence an immigration court's resolution of this request for relief. *See Juvenile Male*, 564 U.S. at 937, 131 S. Ct. at 2864 ("[A] possible, indirect benefit in a future lawsuit cannot save this case from mootness." (emphasis omitted)); *Commodity Futures Trading Comm'n v. Bd. of Trade*, 701 F.2d 653, 656 (7th Cir. 1983) (Posner, J.) ("[O]ne can never be certain that findings made in a decision concluding one lawsuit will not some day . . . control the outcome of another suit. But if that were enough to avoid mootness, no case would ever be moot."). This case is distinguishable from *Mingkid*, in which two aliens appealed directly from the Board of Immigration Appeals and in which the appealed decision found that they had filed a frivolous application, a finding "[o]ften referred to as the 'death sentence' for an alien's immigration prospects." *See Mingkid v. U.S. Atty. Gen.*, 468 F.3d 763, 768 (11th Cir. 2006). Tirado-Yerena fails to meet the burden of proving a "collateral consequence" of his expired custodial sentence, and his challenge to the expired custodial sentence is moot.

**B. Supervised Release**

Tirado-Yerena's challenge to the supervised release, however, is not moot. Supervised release is a part of his sentence that will be affected "by a favorable judicial decision." *Juvenile Male*, 564 U.S. at 936, 131 S. Ct. at 2864. And his

16

deportation does not change that supervised release remains a "live" issue. *Friends of the Earth*, 528 U.S. at 212, 120 S. Ct. at 721.

Despite the expiration of Tirado-Yerena's custodial sentence, the outcome of this sentencing appeal will affect his supervised release. One of the factors that a sentencing court must consider "in including a term of supervised release" is the "sentencing range." 18 U.S.C. §§ 3583(c), 3553(a)(4). Thus, the sentencing court was required to consider the eight-level enhancement to Tirado-Yerena's sentence before deciding to impose a three-year supervised release. A favorable resolution of Tirado-Yerena's appeal of the enhancement might change the duration of his supervised release.

The expiration of Tirado-Yerena's custodial sentence did not moot his challenge to the supervised release. *See United States v. Page*, 69 F.3d 482, 487 n.4 (11th Cir. 1995) ("We hold that this appeal is not moot. . . . [A]ll of the defendants are at least still serving their terms of supervised release, which involve restrictions on their liberty. Only success in this appeal could alter the supervised release portion of their sentences."), *superseded by statute on other grounds*, 18 U.S.C. § 3664(f)(1)(A); *Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995) ("Dawson is still serving his term of supervised release, which is part of his sentence and involves some restrictions upon his liberty. Because success for

Dawson could alter the supervised release portion of his sentence, his appeal is not moot.").

Also, Tirado-Yerena's deportation does not moot his challenge to the three-year supervised release.  The sentencing court stated, "Even if you are deported, there are conditions of supervised release that you will have to comply with during those three years."  The sentencing judgment lists the conditions, one of which is for Tirado-Yerena to keep the probation office of the Northern District of Georgia apprised of any changes in his Mexico address.

The United States questions whether these conditions amount to supervised release: "[A]lthough he is technically subject to a term of supervised release, he is not actually subject to the strictures and requirements of supervised release in Mexico."  However, 18 U.S.C. § 3583 states:

> If an alien defendant is subject to deportation, the court may provide, as a *condition of supervised release*, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

(emphasis added).  And commentary in the Sentencing Guidelines states:

> In a case in which the defendant is a deportable alien . . . , the court ordinarily should not impose a term of supervised release. . . .  The court should, however, consider imposing [the term] . . . if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

18

U.S.S.G. § 5D1.1 cmt. n.5.

Both 18 U.S.C. § 3583 and the Sentencing Guidelines establish that, if supervised release includes conditions to follow deportation, the deportation neither extinguishes nor tolls the term of supervised release.  Other circuits have held the same.  *See, e.g.*, *United States v. Williams*, 369 F.3d 250, 253 (3d Cir. 2004) ("We will follow the other courts of appeals that have held that supervised release is not automatically extinguished by deportation."); *United States v. Akinyemi*, 108 F.3d 777, 780 (7th Cir. 1997) (holding that a defendant's re-entering the States during his term of supervised release was a crime "subject to enhancement" because not only was illegal re-entry a crime but also the prohibition of illegal re-entry was a condition of his supervised release); *United States v. Ignacio Juarez*, 601 F.3d 885, 890 (9th Cir. 2010) (holding that, although "fugitive tolling" applies to a defendant who escapes during his supervised release, a defendant's "term of supervised release continues to run" if he was removed pursuant to a deportation order).

However, even if supervised release applies only in the event of Tirado-Yerena's re-entry, his deportation does not moot his challenge to the supervised release.  In *Orrega*, our circuit held that a defendant's deportation after his custodial sentence but before such supervised release did not moot his sentencing appeal.  *United States v. Orrega*, 363 F.3d 1093, 1096 (11th Cir. 2004).

19

Considering the specific circumstances of the defendant and the likelihood of his re-entry, *Orrega* highlighted that the defendant lived in the United States most of his life and that his entire family is in the States. *Id.* at 1095 n.2. *Orrega* concluded, "There continues to be an active controversy in this case because [the defendant] may, at some point, re-enter the United States." *Id.* at 1095.[1] The likelihood of re-entry in this case is likewise high. Four voluntary departures and two deportations seem not to have deterred Tirado-Yerena in the slightest; he continues to return to the United States.

Attempting to distinguish *Orrega*, the government argues that, whereas here the defendant appeals his sentence, in *Orrega* the government appealed the defendant's sentence. However, the government fails to explain a reason for the distinction. *Orrega* relied on *United States v. Villamonte-Marquez*, 462 U.S. 579, 581 n.2, 103 S. Ct. 2573, 2575 n.2 (1983), which considered both the "possibility that respondents could be extradited and imprisoned for their crimes" and the possibility that "respondents [could] manage to re-enter this country on their own."

---

[1] Attempting to identify a circuit split, the government cites cases from other circuits holding that a defendant's deportation mooted a sentencing appeal. However, each holding is fact-specific, and none contradict this concurrence. *See United States v. DeLeon*, 444 F.3d 41, 56 (1st Cir. 2006) (finding mootness *because* the defendant failed to "identif[y] any practical impact . . . of the *Booker* supervised release issue" but declining to "adopt[] a general rule"); *Okereke v. United States*, 307 F.3d 117, 121 (3d Cir. 2002) (finding that a deportation mooted a sentencing appeal after considering only the defendant's prison sentence and not his supervised release); *United States v. Vera-Flores*, 496 F.3d 1177, 1181–82 (10th Cir. 2007) (holding that the defendant "has not met [his] burden" after rejecting the defendant's only argument against mootness—the possibility that the Attorney General might grant his application for lawful re-entry); *United States v. Frook*, 616 F.3d 773, 778 (8th Cir. 2010) (relying on *Vera-Flores*).

*Id.* The same level of speculation is involved in the consideration of each possibility, and *Orrega*'s holding applies regardless of which party appeals a defendant's sentence.

Although Tirado-Yerena's challenge to the expired custodial sentence is moot, his challenge to the supervised release is not. Neither the expiration of Tirado-Yerena's custodial sentence nor his deportation moots his challenge to the supervised release. I concur with the majority's decision to consider the merits of this appeal.