[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12304
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20938-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUGO MONROY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2017)

Before HULL, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

After pleading guilty to possession of child pornography involving a

prepubescent minor under the age of twelve, in violation of 18 U.S.C.

§ 2252(a)(4)(B) and (b)(2), Hugo Monroy appeals his 108-month sentence.  On appeal, Monroy challenges several guidelines enhancements and also argues that his sentence was procedurally and substantively unreasonable.  After review, we affirm.

## I.  FACTUAL BACKGROUND

In 2014, the Federal Bureau of Investigation ("FBI") investigated child exploitation on the ARES network, a peer-to-peer file sharing network.  Peer-to-peer file sharing software allows internet users to trade digital files with other users around the world by forming a network of linked computers.  An ARES user wanting to trade files places his files from his local computer into a "shared" file directory for others to download.  Then, the ARES user can search for and download files from other computers in the network.

On March 1, 2014, law enforcement, using investigative software, identified a computer on the ARES network that had an IP address linked to Monroy's former residence in Miami.  The IP address was listed as having shared 103 files with hash values and file names indicating images and videos of suspected child pornography.  The same day, investigators successfully downloaded from that IP address one partial video file, which contained footage of, among other things, adult males having vaginal intercourse with female toddlers and of a female prepubescent child performing oral sex on an adult male.

2

Roughly eight months later, on October 31, 2014, law enforcement identified a second computer on the ARES network, this one with an IP address linked to Monroy's new residence in Homestead. This IP address was listed as sharing at least two files with hash values and file names indicating images and videos of suspected child pornography. The next day, November 1, 2014, law enforcement downloaded four completed video files, each containing footage of either vaginal intercourse between a prepubescent child and an adult male, a child performing oral sex on an adult male, or both.

Investigators conducted surveillance on the Homestead residence on June 25, 2015 and September 4, 2015. On September 11, 2015, investigators conducted a search of an online law enforcement database for the IP address linked to the Homestead address, which revealed that a computer with that IP address had used the ARES network to share 29 files containing suspected child pornography during two periods between November 1, 2014 (the date of the last downloads) and February 15, 2015, and between August 5, 2015 and August 27, 2015, respectively.

On November 13, 2015, investigators obtained and executed a search warrant for the Homestead residence, and FBI agents interviewed Monroy. During the interview, Monroy confirmed that he had lived at the Homestead residence with his wife and two children for the last 14 months, that he browsed the Internet

3

every night for a few hours, and that he was familiar with the ARES network and how to use the ARES software to share files. Monroy said he began using ARES in El Salvador and admitted he had installed ARES software on his computer. Monroy also told agents that he had first seen child pornography on ARES in El Salvador and that he had last viewed child pornography on the ARES network using a black Alienware laptop the night before, November 12, 2015. Also on November 13, 2015, investigators conducted another search of the online law enforcement database for the Homestead IP address, which showed that, on that very day, a computer using that IP address had used the ARES network to share 2 files containing suspected child pornography.

During the search of Monroy's Homestead residence, investigators recovered his black Alienware laptop and also a Dell Inspiron laptop. A forensic preview of the Alienware laptop revealed that the ARES file sharing software had been installed on that computer. Approximately 75 still images of suspected child pornography were found in either the "temporary internet files" or the "thumbcache" of the Alienware and Dell laptops.[1] In addition, between March 1, 2014 and November 1, 2014, Monroy's laptop was used to download five videos of suspected child pornography. At sentencing, the parties agreed that at least one

---

[1]The parties agree that the location of the uncovered files means the images were once on, and viewed with, Monroy's computer, but had since been deleted.

of 75 still images found on the laptops on November 13, 2015 was linked to one of the five videos downloaded in 2014.

## II.  DISCUSSION

### A.    Guidelines Claims

Monroy argues that the district court: (1) clearly erred when it considered the five videos of child pornography that investigators downloaded from his computer in March and November 2014 as relevant conduct under U.S.S.G. § 1B1.3(a)(2); and (2) plainly erred when it applied a 2-level distribution enhancement under U.S.S.G. § 2G2.2(b)(3)(F).  Monroy maintains that, without the challenged guidelines enhancements, his properly calculated advisory guidelines range is 37 to 46 months, rather than the 87 to 108 months the district court calculated.

We need not address the merits of these guidelines issues, however, because any error in calculating Monroy's advisory guidelines range was harmless and did not affect his substantial rights.  Under our precedent, a guidelines calculation error is harmless if: (1) the district court stated it would impose the same sentence even if it decided the guidelines issue in the defendant's favor; and (2) assuming an error occurred and the lower guidelines range applied, the sentence resulting from consideration of the § 3553(a) factors would still be reasonable.  See United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006); see also Molina-Martinez v.

5

United States, ___ U.S. ___, 136 S. Ct. 1338, 1345 (2016) (explaining in the plain error context that a guidelines calculation error does not affect a defendant's substantial rights when the sentencing court makes clear it "thought the sentence it chose was appropriate irrespective of the Guidelines range").

Here, the district court, in imposing the 108-month sentence, noted the objections to the its guidelines calculations and, "in an effort to moot" them, made an alternate ruling on the record that, independent of the advisory guidelines, it would impose the same sentence based on its consideration of the 18 U.S.C. § 3553(a) factors. Further, for the reasons discussed below, the district court's 108-month sentence is substantively reasonable in light of the circumstances and the § 3553(a) factors. Accordingly, any error in calculating Monroy's advisory guidelines range did not affect his ultimate sentence and does not require a remand for resentencing.

**B.     Reasonableness**

We review the reasonableness of a sentence for an abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the

chosen sentence.  Id.  The district court also commits procedural error if it treats the guidelines range as presumptively reasonable.  United States v. Hill, 643 F.3d 807, 880 (11th Cir. 2011).

Then, we examine whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances.[2]  Pugh, 515 F.3d at 1190.  The party challenging the sentence bears the burden of showing that it is unreasonable.  Id. at 1189.  We will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  Id. at 1191(quotation marks omitted).

1.    Procedural Reasonableness

As to procedural reasonableness, Monroy raises several procedural errors, none of which has merit.  First, the district court did not treat the Sentencing Guidelines as presumptively reasonable.  Monroy points to the district court's use of the phrase "presumptively the correct guideline sentence" during the sentencing

---

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

hearing.  The district court made the statement while responding to Monroy's

argument that a 2012 Sentencing Commission Report showed that the child

pornography guidelines were flawed and supported his request for a downward

variance.

Specifically, in explaining why a sentence within the guidelines range of 87

to 108 months was appropriate despite the 2012 report, the district court pointed

out that the Sentencing Commission had not yet changed the child pornography

provisions and that the 20-year statutory maximum reflected Congress's "very

serious concern" that child pornography offenses result in significant sentences.

The district court stressed that even a sentence within the guidelines range would

be "a fraction of" Congress's 20-year maximum sentence and that the 48-month

sentence Monroy requested would be only "a fraction of a fraction."  The district

court then stated:

> . . . I think if we were to follow your suggestion, it winds up, one, not giving him presumptively the correct guideline sentence, but it undermines some of the goals of guidelines generally, but just the seriousness of the offense in the first instance.
>
> So, as I said, I appreciate your advocacy, but I think to the extent that it suggests that a guideline sentence is inappropriate sends the wrong message to this defendant about the seriousness of the offense.  It sends the wrong message to those who might engage in this kind of offense who are the end users of why this material is manufactured and produced in the first instance, and it does nothing, that type of sentence does nothing to address the harm to the young children who are the victims of this defendant and others who trade in this kind of material.

When the district court's statement is reviewed in context, it is clear the district court did not treat the guidelines range as presumptively reasonable, but rather examined the objectives behind the Guidelines-recommended sentence before determining that such a sentence was appropriate in Monroy's case.

Further, the district court did not refuse to consider the Sentencing Commission's 2012 Report. The record shows that the district court specifically considered the criticisms in the 2012 Report, which Monroy's counsel discussed at length during the sentencing hearing and included in a sentencing memorandum. The district court also explained why it did not give those criticisms more weight. Moreover, this Court has specifically rejected the argument that the 2012 Report rendered § 2G2.2-based sentences in nonproduction cases procedurally unreasonable or changed the district court's duties regarding consideration of the § 3553(a) factors or downward variances. See United States v. Cubero, 754 F.3d 888, 898-900 (11th Cir. 2014).

The sentencing transcript also belies Monroy's claim that the district court failed to consider the § 3553(a) factors in fashioning its sentence or to adequately explain the chosen sentence. The district court stated that it had considered the § 3553(a) factors, which establishes that it did not ignore those factors. See United States v. Sarras, 575 F.3d 1191, 1219 (11th Cir. 2009) (explaining that the district court's acknowledgement that it has considered the § 3553(a) factors ordinarily is

9

sufficient and that the court need not analyze each factor individually on the record for the sentence to be procedurally reasonable).  Furthermore, the district court discussed several factors at length, including the "repugnant nature of the material" Monroy shared on his computer, his role in creating a demand for such material, which led to the victimization of children, the need for the sentence to reflect the seriousness of Monroy's offense, and the need to deter both Monroy and other consumers of child pornography.

Finally, there is no merit to Monroy's claim that the district court failed to comply with § 3553(c)(1).  Under § 3553(c)(1), the district court must "state in open court . . . the reason for imposing a sentence within a particular point within the range" only if that range exceeds 24 months.  See 18 U.S.C. § 3553(c)(1).  The 87-to-108-month advisory guidelines range the district court calculated spanned 21months and did not exceed 24 months.  Thus, the district court was not obligated by § 3553(c)(1) to give a reason for imposing a sentence at a particular point within the advisory guidelines range.  Nonetheless, the district court gave an adequate explanation of its reason for choosing a sentence at the high end of the advisory guidelines range.  See United States v. Bonilla, 463 F.3d 1176, 1182 (11th Cir. 2006) (explaining that § 3553(c)(1) does not require the sentencing court to incant specific language or articulate consideration of each § 3553(a) factor,

10

particularly where it is obvious from the record that the sentencing court considered many of those factors).

2.      Substantive Reasonableness

Monroy has not carried his burden to show his 108-month sentence is substantively unreasonable, even if it constitutes an upward variance from the 37 to 46 month range Monroy contends should have applied.

The district court, in weighing the sentencing factors, gave significant weight to the seriousness of Monroy's possession of child pornography and to the need to deter Monroy and other potential consumers of child pornography. The district court acknowledged that Monroy did not manufacture child pornography, but found that Monroy's possession offense still warranted a severe punishment as the demand created by consumers like Monroy caused manufacturers to exploit children to produce more child pornography. The district court emphasized the "repugnant nature" of the videos the government was able to download from Monroy's computer, some of which depicted adult males engaging in vaginal and anal intercourse with toddlers and very young children. See United States v. Tome, 611 F.3d 1371, 1379 (11th Cir. 2010) (explaining that the district court is free to consider any relevant information about a defendant's background, character, and conduct in deciding to impose an upward variance); see also 18 U.S.C. § 3661.

Monroy's undisputed history of downloading, viewing, and sharing child pornography using the ARES network supports the district court's concerns. Monroy admitted he had first looked at child pornography using the ARES network while he still lived in El Salvador (prior to migrating to the United States in 2009) and had last viewed child pornography the night before his November 13, 2015 interview, a period of six years.  During the FBI's investigation, law enforcement was able to download child pornography videos from Monroy's home computer twice over eight months, first in March 2014, then in November 2014. At the time of the first download, Monroy's computer was sharing over the ARES network 103 files containing images and videos of suspected child pornography. In addition, search of a law enforcement database showed two extended periods, one between November 1, 2014 and February 15, 2015, and another between August 5 and 27, 2015, when Monroy shared files containing suspected child pornography using the ARES network.  In fact, it was during the first period that investigators were able to download the five videos from Monroy's laptop.  Also, when investigator's searched Monroy's home on November 13, 2015, they found evidence of 75 still images of child pornography on his laptop.  It is fair to infer from these undisputed facts that Monroy was not a one-time consumer.

Monroy describes himself as a "low-level offender" who does not "present[] a danger to any person" and points out that he abstained from using the ARES

12

network for periods of time and did not collect the child pornography he downloaded and viewed. These circumstances do not leave us with the definite and firm conviction that his 108-month sentence is outside the range of reasonable sentences. As the district court noted, the 108-month sentence was only a fraction—less than half—of the statutory maximum of twenty years, or 240 months, for Monroy's offense. See United States v. Stanley, 739 F.3d 633, 656 (11th Cir.2014) ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence."). Given Monroy's history of downloading and sharing child pornography using a file-sharing program and the egregious nature of the child pornography Monroy downloaded and shared, we cannot say the district court abused its discretion.

**AFFIRMED.**