# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2021

Lyle W. Cayce
Clerk

No. 21-20056

United States of America,

*Plaintiff—Appellee*,

*versus*

Joshua Louis Little,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-433-1

Before Clement, Haynes, and Wilson, *Circuit Judges*.

Per Curiam:*

Joshua Little appeals the revocation of his supervised release and resulting sentence of 12-months' incarceration on the grounds that: (1) he was denied the opportunity to confront witnesses against him without good cause; and (2) his sentence is procedurally unreasonable. Finding that Little

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

failed to object on confrontation grounds and that the district court did not impose a procedurally unreasonable sentence, we AFFIRM.

## I.

Little was convicted of willfully injuring or committing a depredation against property of the United States, resulting in damage less than $1,000. The district court sentenced him to time served (approximately 11 months), one year of supervised release, and a $25 special assessment. His conditions of release included a standard condition that he not knowingly leave the judicial district in which he was "authorized to reside"—the Southern District of Texas—"without first getting permission from the court or the probation officer." Shortly after his conviction, Little was accused of leaving the Southern District of Texas and travelling to Washington, D.C. The Government subsequently sought to revoke his supervised release.

At his revocation hearing, the Government called Federal Probation Officer Laurie Ulsh to testify. Ulsh explained that Little previously requested to travel to Washington, D.C. to attend a funeral, but she had responded that—without further information—she would have to deny the request. According to Ulsh, Little did not follow up, so he never received permission to travel.

Nonetheless, Ulsh testified that she received a voicemail soon thereafter from Secret Service Agent Aaron Barbosa informing her that he had encountered Little outside the White House. Between the voicemail and a follow-up phone call, Agent Barbosa informed Ulsh that he had received a tip from a cab driver that Little had "said something about C4 in the White House." Barbosa interviewed Little, who claimed to have said "Greg 4." Agent Barbosa told Ulsh that he then called Little's father, who confirmed that Little was expected to return to Houston later that day and that he "left with no bags and just the clothes on his back." Little was released after

No. 21-20056

questioning; according to Ulsh, "they questioned him just long enough to run his name."

Ulsh's testimony was the only evidence introduced at the hearing. All statements attributed to Agent Barbosa were based on his conversations with Ulsh (hearsay), and any statements attributable to Little's father were based on Agent Barbosa having relayed them to Ulsh (double hearsay). At the outset of Ulsh's testimony, Little's attorney "object[ed] to any hearsay being admitted through this witness." The district court did not respond directly to the objection; rather, it permitted Ulsh to continue testifying.

At the conclusion of Ulsh's testimony, Little's attorney reiterated that all "we have is . . . hearsay within hearsay." In response, the district court reminded Little's attorney that it was "not restricted [by] the rules of evidence for [a revocation] proceeding." Little's attorney conceded the point but refined his objection, stating:

> There are a whole lot of unknowns here. The point is we don't have independent verification. We don't have travel information. We don't have flights. We don't have a picture. We don't have a driver's license up there. It's all very weak evidence, is my point, Your Honor. And so I would ask the Court to find that there is no violation.

Following counsel's argument, Little briefly addressed the court saying only, "I didn't go to D.C. and that information is incorrect, so I plead not guilty to this."

After hearing testimony and argument, the district court found that Little violated the terms of his supervised release and sentenced him to the statutory maximum of twelve months imprisonment in a mental health facility. This appeal followed.

No. 21-20056

## II.

"A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that a condition of release has been violated." *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995). When facing potential revocation, defendants are protected by the Fifth Amendment's guarantee of due process, which, while not as absolute as the Sixth Amendment's Confrontation Clause guarantee, requires that revocation defendants "have 'the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).'" *United States v. Williams*, 847 F.3d 251, 253 (5th Cir. 2017) (quoting *McCormick*, 54 F.3d at 221).[1]

## A.

We first determine our standard of review. We generally review the revocation of a defendant's supervised release for abuse of discretion. *McCormick*, 54 F.3d at 219. We review challenges concerning due process confrontation rights, on the other hand, "de novo, but [] subject to a harmless error analysis." *Id.*; *see also United States v. Minnitt*, 617 F.3d 327, 332 (5th Cir. 2010) (same). But the Government argues that neither abuse of discretion nor de novo review applies here. Instead, according to the Government, we should review for plain error because Little failed to object on confrontation grounds. We agree.

---

[1] Little primarily invokes FED. R. CRIM. P. 32.1(b)(1)(B)(iii), which guarantees to defendants, "upon request, an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." This court has not, to our knowledge, differentiated excusing confrontation "in the interest of justice" from doing so for "good cause." *See United States v. Alvear*, 959 F.3d 185, 192–94 (Oldham, J., concurring) ("Maybe 'good cause' and the 'interest of justice' are the same thing. Maybe they're different." (internal citations omitted)). We have no occasion here to resolve any possible distinction between the standards.

4

"To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). Put another way, an objection must be specific and clear to preserve error, *id.* at 273, not general and "far removed from the testimony at issue . . . ." *United States v. McDowell*, 973 F.3d 362, 366 (5th Cir. 2020). Little does not satisfy this standard.

At his revocation hearing, Little objected to the admission of hearsay—the introduction of Agent Barbosa's statements through Ulsh—twice: once at the beginning of Ulsh's testimony and once at the conclusion of her testimony. At no point, however, did Little raise his right to confront Agent Barbosa. Nevertheless, Little would have us transform his hearsay objection into a confrontation objection. According to Little, our statement in *McDowell*, that "McDowell concedes that he made neither a hearsay nor a due process objection," 973 F.3d at 366, serves as the predicate to convert a hearsay objection into a confrontation objection. Not so. It is indeed true that hearsay presents a "two-fold" problem—reliability and confrontation. *Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 978 (5th Cir. 1988). But we have never held that merely claiming "hearsay" suffices to preserve a confrontation issue. On the contrary, at least one panel of this court has distinguished between an objection based on hearsay and an objection explicitly calling for the right to confront adverse witnesses. *See United States v. Mendoza*, 414 F. App'x 714, 718 (5th Cir. 2011) (unpublished, per curiam). Little's objection challenged the "unknowns" in Ulsh's testimony, including travel information, flights, pictures, driver's licenses, and other "independent verification." It is readily apparent that his objection to the Government's "weak evidence" concerned the reliability of Ulsh's testimony, not his right to confrontation. Accordingly, a plain error standard applies.

B.

To establish plain error, Little must satisfy three prongs. "First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights . . . ." *United States v. Mims*, 992 F.3d 406, 409 (5th Cir. 2021) (quoting *Molina-Martinez v. United States*, --- U.S. -----, 136 S. Ct. 1338, 1343 (2016) (internal citation omitted)). If Little "can satisfy those three prongs, then we 'ha[ve] the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Ordinarily, a district court determining whether to admit hearsay evidence in a revocation hearing should "employ a balancing test in which [it weighs] 'the [defendant's] interest in confronting a particular witness against the government's good cause for denying it . . . ." *McCormick*, 54 F.3d at 221 (quoting *United States v. Kindred*, 918 F.2d 485, 486 (5th Cir. 1990)). Yet, the defendant must affirmatively invoke the right to confront witnesses. *See, e.g.*, *McDowell*, 973 F.3d at 365–66 ("There is no authority requiring a specific good-cause finding in the absence of an objection. On the contrary, the limited persuasive authority available indicates district courts are not required to make such a finding sua sponte."(italics omitted)) (collecting cases); FED. R. CRIM. P. 32.1(b)(1)(B)(iii) (requiring defendants be given an opportunity to question adverse witnesses only "upon request"). Absent invocation, as is the case here, the district court had no reason to sua sponte raise a "good cause" inquiry; therefore, the court did not plainly err. *See id.* at 366; *see also Mendoza*, 414 F. App'x at 718 ("Given that [Appellant] cannot supply any precedent requiring a sua sponte balancing, we cannot say that the error—if any—was plain.").

No. 21-20056

### III.

Little also avers that his sentence is procedurally unreasonable. Because he failed to object to the reasonableness of his sentence at his revocation hearing, we again review for plain error. *See Mims*, 992 F.3d at 409.

Little first asserts that the district court erred when it did not consider the Sentencing Guidelines' policy statement. The Government concedes that any consideration of the Guidelines is absent from the record. Accordingly, Little "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Mims*, 992 F.3d at 409 (quoting *Molina-Martinez*, 136 S. Ct. at 1343).[2] Little fails to do so. Even assuming arguendo that Little meets this burden, however, we decline to exercise our discretion by reversing the court's sentence.

"Relief under the fourth prong is wholly discretionary." *Id.* at 410 (citation omitted). To that end, the fourth prong—whether to remedy the error—is applied on a case-specific, fact-intensive basis that depends upon "the degree of the error and the particular facts of the case." *Id.* (citation omitted). A review of the record supports our decision to not exercise our discretion. Little's revocation hearing evinces that he is no respecter of the law. Ulsh's testimony revealed that Little requested leave to travel to Washington, D.C. After his request was denied, and with full knowledge of the conditions of his supervised release—which were handed down not even two months prior—Little traveled outside the Southern of District of Texas anyway. The district court explicitly found this evidence against Little—

---

[2] While *Mims* concerned the application of an incorrect Guideline range, 992 F.3d at 411, rather than a failure to consider the Guidelines on the record, the holding is nonetheless instructive.

including Ulsh's testimony that Little's name was flagged in the Atlas System as having been run by law enforcement—to be "credible." The court, aware of these facts, imposed a statutory maximum sentence three months above the advisory range. And, while the "possibility of additional jail time . . . warrants serious consideration," *Rosales-Mireles v. United States*, --- U.S. ----, 138 S. Ct. 1897, 1907 (2018), the imposition of an above-range sentence is supported by the record; namely, the sentence is supported by Little's intransigence. *See Mims*, 992 F.3d at 410–11, n.4. Without more, we decline to disturb the district court's ruling.[3]

Next, Little claims that the court erred by not providing a sufficient statement of reasons in support of the sentence. While we are again disappointed by the brevity of the district court's explanation in support of the sentence, we still find no plain error. The facts before the district court were simple: (1) Little was convicted of an offense pursuant to 18 U.S.C. § 1361; (2) as a result, he was sentenced to, *inter alia*, time served followed by a one-year term of supervised release; (3) Little agreed to abide by the conditions of his supervised release, which included not leaving the Southern District of Texas without prior approval; and (4) Little left the Southern District of Texas despite his probation officer denying his request. The district court was aware of this record, summarized it—albeit, briefly— before imposing a sentence, and thus provided the requisite explanation before sentencing. *See Rita v. United States*, 551 U.S. 338, 357–58 (2007). And Little fails to show that any error affected his substantial rights. *See*

---

[3] The district court's approach to creating a record bears mentioning. We have repeatedly instructed courts to discharge their duties by making appropriate findings on the record. *See, e.g., McCormick*, 54 F.3d at 220 & n.7. Counsel, defendants, the public, and this court rely on such records to ensure that justice is properly meted out. The district court is accordingly instructed to fulfill its obligations in the future by properly making record findings and conclusions.

*Mims*, 992 F.3d at 409.  Furthermore, even if the district court erred in not providing an adequate explanation of its decision, the same reasons discussed in response to Little's first procedural objection counsel us against exercising our discretion again.  *See Mims*, 992 F.3d at 409.

Finally, Little argues that the court failed to comply with Rule 32.1 of the Federal Rules of Criminal Procedure by not allowing him to make a mitigation argument.  Pursuant to Rule 32.1(b)(2)(E), Little was entitled to "an opportunity to make a statement and present any information in mitigation" at his revocation hearing.  Despite Little's protestation, he received the very opportunity that Rule 32.1 demands.  To be sure, the court invited Little's attorney to argue on his behalf and Little, himself, was granted the opportunity to say "anything on [his] own behalf."  Consequently, the district court did not plainly err.

## IV.

Because we find that the district court neither denied Little his confrontation rights nor imposed a procedurally unreasonable sentence, we AFFIRM.

Haynes, *Circuit Judge*, concurring:

I concur in Sections I and II and in the holding of Section III of the majority opinion.   I write to explain more fully my joinder in the determination not to grant plain error relief on Little's challenge to the procedural reasonableness as to the sentence.  In addressing the corollary area of sentencing guidelines (this case, of course, involves policy statements), the Supreme Court has made clear that in cases where the guidelines are improperly calculated, prong 3 of plain error review will usually be met, and discretion should usually be exercised to address the error. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016); *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906–09 (2018).   Thus, if that were the case here, I might conclude differently about our exercise of discretion.

However, this case involves a silent record, not a record of an erroneous calculation.  At the revocation hearing, the parties and the district court simply did not discuss the policy statement range for Little's supervised release violation.   Unlike the complex calculation of many sentencing guidelines, here it was quite clear what the policy statement range would be for this violation:  it was clearly a Grade C violation (specifically, a violation of the "condition of supervision" that Little not leave the Southern District of Texas without authorization) and Little's PSR from his original crime (which was sentenced not long before this hearing) demonstrated that he had a criminal history category of I. *See* U.S. Sent'g Guidelines Manual § 7B1.1(a)(3) (U.S. Sent'g Comm'n 2018).  It was thus easy enough for the experienced district judge to know the policy statement range of 3-9 months. *See id.* § 7B1.4.  The fact that the relevant range was not specifically mentioned at the hearing is not proof that the district court applied the wrong range or that the applicable range was unknown.

No. 21-20056

Accordingly, it is not at all clear to me that prongs 1 and 2 of plain error review are met.

Even if we determine that, because the Government did not challenge those prongs, we should reach prongs 3 and 4, the lack of an actual error in calculation demonstrates to me that the usual rules of *Molina-Martinez* and *Rosales-Mireles* are not in play here. Accordingly, I join in the determination to deny relief on this claimed plain error.